David J. Heaslett, Esq. (CA Bar No. 061463)
#6 Graeagle Village Center
P.O. Box 340
Graeagle, CA 96103
Telephone: (530) 836-4625

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re: | Case No.: 07-10388-AJ9 |
| Palm Drive Health Care District, | Chapter 9 |
| Debtor | |

**SECOND AMENDED PLAN OF ADJUSTMENT
DATED APRIL 30, 2009**

      The Palm Drive Health Care District (the "Debtor" or the "District"), proposes the following *Second Amended Plan of Adjustment Dated April 30, 2009* (as it may be further amended, modified or altered, the "Plan"). This Plan amends and supersedes the *Amended Plan of Adjustment Dated March 10, 2009*, previously filed by the District on March 10, 2009.

      The accompanying *Disclosure Statement for Second Amended Plan of Adjustment* ("Disclosure Statement") contains a detailed discussion of the Plan and the means for its implementation, together with the District's projection of income and expenses. The Disclosure Statement also contains an exhibit that identifies those claims filed against the District that may be subject to dispute by the District following confirmation of the Plan. If a claim is not specifically listed on such exhibit, such claim will be deemed allowed under the Plan in the amount filed.

      The Plan should be read in conjunction with the Disclosure Statement. The Plan is a legal document and, upon confirmation, will become binding upon all parties in interest. The Debtor urges all creditors and other parties in interest to consult with independent counsel in connection with their decision to vote to accept or reject the Plan.

///

# 1 INTRODUCTION

The District and its general legal counsel, bankruptcy counsel and counsel for the Official Unsecured Creditors Committee ("Committee") have jointly formulated the Plan. Given the precarious financial health of the Palm Drive Hospital, the Plan provides a meaningful distribution to creditors while still allowing the hospital to remain in operation. Due to the time constraints required to exit bankruptcy and obtain adequate capital to remain in operation, this Plan represents the District's best offer to creditors. The Committee supports the Plan and urges creditors to vote to *accept* the Plan. The District's Board of Directors understands the support its creditors have provided to the hospital and believes this offer is reflective of that appreciation and generous both to large and small creditors given the hospital's financial condition.

The Plan requires, as a condition to its effectiveness and the District's emergence from bankruptcy, that the District secure outside funds through a municipal financing arrangement. The District believes that the only funding source currently available is a sale of tax-exempt Certificates of Participation ("COPs"). Due to the contractual covenants under certain existing bond obligations of the District, the District is unable to incur any senior, parity or other long-term debt during the pendency of its Chapter 9 bankruptcy case. The District has retained Sutter Securities Incorporated ("Sutter") as its investment banker in preparation for the issuance of approximately $10 to $12 million of COPs, under which the District will enter into a lease and leaseback of its facilities with the Authority and its obligations under the leaseback will be on a parity with its existing Bonds (as defined below).

Through Sutter's work with McDonnell Investment Management, LLC, a potential purchaser for the COPs has been identified. The potential purchaser is UnitedHealth Group Incorporated ("UnitedHealth"). UnitedHealth is interested in purchasing the COPs under the auspices of the UnitedHealth Group California Health Care Investment Program (the "Program"). UnitedHealth has purchased and is in the process of proposing to purchase bonds from the North Sonoma County (Healdsburg) Hospital District and the Sonoma Valley Health Care District. The Program was formed as a result of the acquisition of PacifiCare Health Systems and its affiliated companies by United Health. The purpose of the Program is to provide access to capital through a dedicated

investment portfolio for health care entities providing services to currently underserved, low-income and underinsured communities throughout California. Thus, UnitedHealth is a ready, willing and able purchaser of COPs. Given today's market conditions, there appear to be no other interested purchasers of the COPs.

The sale of the COPs to UnitedHealth is contingent and conditioned upon (a) the confirmation of the Plan and the discharge of the District, (b) the receipt of an "investment grade" rating for the COPs from Standard & Poor's, and (c) the other terms and conditions of the underwriting for the COPs by Sutter. Correspondingly, the effectiveness of the Plan is itself contingent and conditioned upon the sale and closing of the COPs and the District will, as part of the confirmation proceedings, request the Court to approve the sale of the COPs.

If the Plan is not accepted in a timely fashion, the District may be forced to drastically reduce the level of services at the hospital. The District therefore believes that it is in the best interests of all parties to approve this Plan in a timely fashion so that the District can obtain the capital needed to make payments to creditors, pay off other debt, and complete needed equipment and building upgrades.

**2      GENERAL BACKGROUND**

The District is a local hospital district organized under the provisions of Section 32,000, et seq., of the California Health and Safety Code. It operates a small 37-bed acute care hospital, with an ICU, Emergency Department, radiology service, laboratory and clinic in Sebastopol, Sonoma County, California. The District is governed by a Board of Directors elected by the registered voters in the District. Day-to-day operations of the District are conducted by its management and professional staff.

Chapter 9 of the Bankruptcy Code was established to allow bankruptcy protection and reorganization opportunities under the Bankruptcy Code for local government entities. In many respects it is similar to the more familiar provisions of Chapter 11, although there is only minimal Court supervision of the affairs of a Chapter 9 debtor.

Only creditors holding filed claims are eligible to vote and receive a distribution under the Plan. All filed claims are deemed allowed for the purposes of voting, unless an objection to the

claim has been filed prior to the hearing to consider confirmation of the Plan. Allowance of the claim for the purposes of voting is not necessarily allowance of the claim for the purposes of paying a distribution on the claim. The claims of all non-governmental creditors that failed to timely file proofs of claim on or before September 14, 2007, shall be discharged upon confirmation of the Plan. Any claim held by a governmental unit was required to be filed on or before October 3, 2007. Late claims are considered allowed claims unless and until an objection on grounds of untimeliness is sustained by the Court. If a distribution would be payable under the Plan to any creditor whose claim is subject to a filed objection, the District shall withhold the distribution to that creditor until the objection to the claim has been finally determined.

Since the Debtor is a local government entity organized under the laws of the State of California, management and control of the District will remain with its Board of Directors, elected by the eligible voters of the District, subject to the requirements of applicable state and federal non-bankruptcy law, except as otherwise provided under the Plan. The board will continue to have authority over the management and administration of the District, and will have responsibility for administering the Plan and ensuring that distributions under the Plan are timely made to creditors.

The claims against the District have been divided into classes. Each class is composed of one or more creditors whose claims are of the same type, and who will receive the same treatment, as other members of the class. A list of classes, a description of the members of each class, and the proposed treatment of each class is set forth below. The description of each class also indicates if that class is impaired or unimpaired within the meaning of 11 U.S.C. § 1124. This is a proceeding under Chapter 9 of the Bankruptcy Code and as such, many, but not all, of the requirements for confirmation under § 1129 of the Code apply. For a plan of adjustment to be confirmed and bind creditors and the District, the plan of adjustment must be accepted by at least one impaired class. If not all impaired classes accept the Plan, the Plan can only be confirmed if it meets all the requirements of 11 U.S.C. § 943 and portions of § 1129. A class accepts the Plan if the holders of at least two-thirds (2/3) in amount (in dollars) and more than one-half (½) in number of allowed claims within the class vote to *"Accept"* the Plan. To the best knowledge of the Board of Directors, administrators and counsel, no regulatory or electoral approval is necessary to carry out the Plan.

**3    ASSUMPTION OR REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS**

All unexpired leases or executory contracts of the Debtor that are not specifically rejected under the Plan or by a separate motion to reject shall be deemed assumed by the Reorganized District on the Effective Date (including any modifications, amendments or supplements made to such agreements). For the avoidance of doubt, the Debtor hereby assumes its Medicare contracts as of the Effective Date of the Plan. The Reorganized District shall assume the *Information Systems Agreement Document # 03538* with Spectron Corporation as of the Effective Date of the Plan. The Spectron Corporation proof of claim filed in the Chapter 9 case shall be deemed amended to assert a claim for a Cure Payment under such agreement in the amount of $15,211.72, which shall be paid as an administrative expense at the time set forth in Article 7 of the Plan.

Except as otherwise provided in the Plan, the District does not believe that there are any Cure Payments due under any contracts or leases assumed by the Reorganized District under the Plan. Any person that fails to object to the assumption by the Reorganized District of an executory contract or unexpired lease on or prior to the date set by the Court for filing objections to confirmation of the Plan shall be forever barred from (i) asserting any other, additional or different amount on account of such obligation against the Reorganized District, and (ii) sharing in any other, additional or different distribution under the Plan on account of such obligation. If and to the extent any Cure Payment obligation is determined and allowed by the Court, the Reorganized District shall satisfy such Cure Payment by making a cash payment in the manner provided for administrative expenses under Article 7 of the Plan.

**4    DEFINITIONS**

Except as otherwise indicated herein or in the Disclosure Statement, the terms used in this Plan have the definitions used in the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court and the United States District Court for the Northern District of California. In addition, the following terms shall have the following meanings:

///

4.01 "Allowed Claim" means a claim with respect to which (i) a proof of claim has been filed with the Court and (ii) as to which either (a) no objection to the allowance thereof has been filed within any applicable period of limitation fixed by the Plan or an order of the Court, or (b) any objection has been determined by an order or judgment which is no longer subject to appeal and as to which no appeal is pending. An Allowed Claim shall not include post-petition interest unless otherwise stated hereafter in the Plan. No post-petition interest on unsecured claims shall be paid under the Plan unless otherwise stated in the Plan.

4.02 "Allowed Secured Claim" means an Allowed Claim secured by a lien, security interest, mortgage, deed of trust, encumbrance or other interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value pursuant to § 506(a) of the Code of the property or to the extent of the amount subject to said setoff as the case may be. An Allowed Secured Claim may include post-petition interest if permitted under § 506 of the Code or otherwise agreed by the Debtor or provided herein.

4.03 "Bankruptcy Code" or "Code" means Title 11 of the United States Code, as now in effect or hereafter amended. All citations in the Plan to section numbers are to the Code unless otherwise expressly indicated.

4.04 "Bonds" means the $9,800,000.00 Palm Drive Health Care District (Sonoma County, California) Parcel Tax Revenue Bonds, Series 2005.

4.07 "Confirmation Order" means the order entered by the Court (a) confirming the Plan in accordance with the provisions of Chapter 9 of the Bankruptcy Code, (b) determining that the deposit by the Reorganized District of certain proceeds of the Recovery Financing into the Plan Fund following the Effective Date shall, pursuant to Section 944(b)(3) of the Bankruptcy Code, secure the payment of the obligations of the Reorganized District to creditors as provided in the Plan, and (c) containing a finding that the Parcel Tax Revenues are Special Revenues.

4.08 "Court" means the United States Bankruptcy Court for the Northern District of California in which the Debtor's Chapter 9 case is pending.

///

///

4.09 "Cure Payment" means any monetary amounts payable to the non-debtor party to any executory contract or unexpired lease, pursuant to Section 365(b)(1) of the Bankruptcy Code, as a condition to the assumption of such contract or lease.

4.10 "Effective Date" means the date of the consummation and closing, according to its terms and conditions, of the Recovery Financing.

4.11 "Ombudsman" means a member of the Committee that is selected by the Committee, and disclosed to the Court at the hearing to consider confirmation of the Plan, to serve as the ombudsman for the holders of general unsecured claims following confirmation of the Plan.

4.12 "Parcel Tax" means the special parcel tax on each taxable parcel of real property in the District which was approved by 69.4% of the voters of the District at a special election held on November 2, 2004.

4.13 "Parcel Tax Revenues" means the annual amounts collected by Sonoma County on behalf of the District from the Parcel Tax.

4.14 "Plan Fund" means the segregated fund established by the Reorganized District upon the Effective Date containing proceeds from the Recovery Financing that are adequate and sufficient for the payment of administrative claims, plan expenses and Class C1, Class C2 and Class C3 claims.

4.15 "Recovery Financing" means the occurrence of all of the following: (a) the sale of the COPs to the Owners (as defined in Section 5 of the Plan), (b) the execution of the Lease Agreement and the Facilities Lease (each as defined in Section 5 of the Plan), (c) the payment to the District of the net proceeds of the sale of the COPs by the Authority as a lump sum payment under the Facilities Lease, (d) the funding of the Plan Fund, (e) the execution and delivery of an amendment to the Trust Indenture in form and substance satisfactory to counsel for the District and the indenture trustee for the Bonds, (f) the execution of such other documents and instruments as may be required by the Authority, the Owners or the Trustee (each as defined in Section 5 of the Plan), and (g) the satisfaction or waiver of other conditions precedent, if any, to the closing of the sale of the COPs.

4.16 "Reorganized District" means the District as of and following the Effective Date.

///

4.17 "Simpson Claim" means the Allowed Claim of Stephen and Shawndra Simpson pursuant to that certain *Promissory Note* dated November 16, 2006, in the principal amount of $200,000.

4.18 "Sonoma County Note" means the *Palm Drive Health Care District (Sonoma County, California) 2008 Note Series A* issued by the District to the Sonoma County Treasurer on August 25, 2008, in the principal amount of $2,905,000, and approved by the Court pursuant to its order entered on August 19, 2008.

4.19 "Special Revenues" means "special revenues" as defined in 11 U.S.C. § 902(2).

4.20 "Trust Indenture" means the Indenture of Trust dated as of April 1, 2005 between the District and the bond trustee, now Wells Fargo Bank, National Association, as amended under this Plan.

## 5     MEANS FOR IMPLEMENTATION OF THE PLAN

a. <u>Issuance of COPs</u>. Upon the consummation of the sale of the COPs, the District shall cause to be deposited sufficient funds into the Plan Fund to pay any outstanding administrative expense claims, plan expenses, and the Allowed Claims of creditors in Classes C1, C2 and C3 of the Plan, in the amounts and at the times set forth in the Plan. The amount to be deposited by the District into the Plan Fund from the proceeds of the COPs shall be determined by the District and the Committee at or prior to the confirmation hearing.

The District will satisfy its obligations under the Plan (including the repayment of the Sonoma County Note), and finance a portion of its past working capital expenses and operating losses and certain of its future long-term capital and operating needs through the Recovery Financing (*i.e.*, the sale of the COPs). The COPs will represent the direct, undivided fractional interests of the registered owners thereof (the "Owners") in lease payments (the "Lease Payments") to be made by the District for the leaseback of its existing hospital facilities (the "Facilities") pursuant to a lease agreement ("Lease Agreement") by and between the District and the Northern California Health Care Authority (the "Authority").

The COPs will be executed and delivered pursuant to a trust agreement, by and among the District, the Authority and its Trustee (the "Trustee"). Pursuant to a Facilities Lease, by and between

the District and the Authority, the District will lease the Facilities to the Authority for a lump sum payment equal to, the principal amount of the COPs (less closing costs and other items), and will lease the facilities back to the District pursuant to the Lease Agreement. Pursuant to an Assignment Agreement, by and between the Authority and the Trustee (the "Assignment Agreement"), the Authority will assign to the Trustee, for the benefit of the Owners, its rights under the Lease Agreement, including its right to receive Lease Payments, and its right to enforce amounts payable upon default. The District's obligations to pay rent to the Authority under the Lease Agreement will be equal to the debt service payments to be made from time to time on the COPs. The District will secure its obligations to make lease payments under the Lease Agreement with a pledge of the receipts from the Parcel Tax, which pledge will be on a parity basis with the Bonds. The District will also irrevocably agree in the documents for the COPs and the amendment to the Trust Indenture for the Bonds, and upon entry of the Confirmation Order will have irrevocably agreed, that the Parcel Tax Revenues are Special Revenues.

The COPs are intended to provide tax-exempt income to the Owners, resulting in a lower borrowing cost to the District than if it was required to complete the financing on a conventional, taxable basis.

b. <u>Treatment of Lenschmidt Claims</u>. All claims filed by Steven P. Lenschmidt, LLC, Fred L. Lenschmidt Living Trust, or other persons or entities affiliated with such parties ("Lenschmidt Claims"), against the Debtor have been acquired by and transferred to the Palm Drive Health Care Foundation, a California nonprofit mutual benefit corporation (the "Foundation") and are held by such foundation for the purposes of voting and distribution under the Plan. A portion of the Lenschmidt Claims in the amount of approximately $55,000 was filed on account of post-petition rent. Unless the Foundation agrees to a different treatment or amount of such portion of the claims, and except as may otherwise be determined by the Court, such portion of the claims shall be paid as an administrative expense at the time set forth in Article 7 of the Plan. All other Lenschmidt Claims now held by the Foundation shall be treated as unsecured claims under the Plan and classified in Class C2 of the Plan. Any liens granted or conveyed as security for any Lenschmidt Claims shall be deemed terminated, withdrawn and released against any property of the District.

## 6 EFFECTIVENESS OF THE PLAN

Following confirmation, the effectiveness and consummation of the Plan is contingent and conditioned upon (a) the entry of the Confirmation Order, and (b) the occurrence of the Effective Date. If the foregoing conditions to the effectiveness and consummation of the Plan have not occurred by August 1, 2009, the Plan shall be deemed withdrawn by the District, without further notice to creditors or action of the Court, unless the foregoing deadline is extended by mutual agreement by the Committee and the District in a filing with the Court.

## 7 PLAN EXPENSES AND ADMINISTRATIVE EXPENSES

All amounts to be paid by the District for services or expenses in the Chapter 9 case or incident to the Plan (including professional fees for counsel for the Committee and the District for the period from the petition date through the Effective Date, to the extent not otherwise paid during the pendency of the Chapter 9 case), will be fully disclosed to the District and if reasonable will be paid by the Reorganized District pursuant to Section 943(b)(3) of the Bankruptcy Code on or within ten (10) calendar days following the Effective Date of the Plan from the Plan Fund or general funds of the Reorganized District. All administrative expenses allowed under Section 507(a)(2) of the Code will be paid on or within ten (10) calendar days following the Effective Date of the Plan from the Plan Fund or general funds of the Reorganized District. Notice and opportunity for hearing upon allowance of administrative expenses will not be given unless the administrative expense is disputed by the Debtor. All amounts due, if any, on account of post-petition taxes will be paid within thirty (30) calendar days following the Effective Date of the Plan. The District does not believe that there are any outstanding post-petition taxes and no such requests for payment have been filed.

## 8 CLASSIFIED CLAIMS

a. <u>Class S1</u>. Class S1 consists of the Allowed Secured Claim of the holders of record of the Bonds. The Bonds are secured by a first priority lien on the Parcel Tax Revenues and the right of the District to receive Parcel Tax Revenues. The Allowed Secured S1 Claim shall include all principal, interest, costs, trustee's fees and expenses, and other items of indebtedness of whatever form due under the Trust Indenture for the Bonds. Class S1 is unimpaired.

///

b. <u>Class S2</u>. Class S2 consists of the Allowed Secured Claim of the holders of record of the Insured General Obligation Bonds, Series 2000, secured by a first priority lien on the annual property tax revenues collected by the County of Sonoma, more fully described in the trust indenture for such bonds and other documents, and insured by AMBAC Assurance Corp. The Allowed Secured S2 Claim in Class S2 shall include all principal, interest, costs and other items of indebtedness of whatever form due under the indenture and the other documents and any related instrument for the GO Bonds. Class S2 is unimpaired.

c. <u>Class S3</u>. Class S3 consists of the Allowed Secured Claim of the holder of the Sonoma County Note. The maturity date of the Sonoma County Note will be deemed extended to the 15th calendar day following the Effective Date, and all other terms and conditions of such note shall remain unaffected. On or before the 15th calendar day following the Effective Date, the Reorganized District shall select one of the following alternative treatments for the Sonoma County Note: (a) the outstanding amount due under the Sonoma County Note, including all accrued interest, will be repaid by the Reorganized District in full, in cash (from the proceeds of the Recovery Financing) on the 15th calendar day following the Effective Date, in full and final satisfaction of such claim, or (b) with the consent of the holder of the Sonoma County Note, the maturity date of the Sonoma County Note will be deemed further extended to June 30, 2010. Upon repayment, the holder of the Sonoma County Note will release and terminate all liens and security interests on the general revenues of the District, including excess Parcel Tax Revenues. Class S3 is impaired.

c. <u>Class C1</u>. Class C1 consists of Allowed Claims equal to or less than $10,000. Class C1 Claims are estimated to be, in the aggregate, approximately $267,000, and are held by 104 claimants. Each holder of an Allowed Claim in Class C1 will be paid by the Reorganized District, in cash (from the Plan Fund), an amount equal to 75% of the amount of its Allowed Claim, without interest, within thirty (30) calendar days of the Effective Date, in full and final satisfaction of such claim. Any Class C2 creditor with a Claim exceeding $10,000 may elect to reduce its Claim to $10,000 and be treated as the holder of a Class C1 claim by giving written notice of his or her election to treat its Claim as a Class C1 Claim on the ballot provided for voting on the Plan. Class C1 is impaired.

d. <u>Class C2</u>. Class C2 consists of Allowed Claims in excess of $10,000. Class C2 claims are estimated to be, in the aggregate, approximately $2.91 million, and are held by 52 claimants. Unless the holder of a Class C2 claim elects treatment as a Class C1 creditor above, each holder of an Allowed Claim in Class C2 will paid by the Reorganized District, in cash (from the Plan Fund), an amount equal to 55% of the amount of its Allowed Claim, without interest, within thirty (30) calendar days of the Effective Date, in full and final satisfaction of such claim. Class C2 is impaired.

e. <u>Class C3</u>. Class C3 consists of the Simpson Claim. On or before the 30th calendar day following the Effective Date, the District shall pay to the holders of the Simpson Claim the amount of $153,074.68 in cash (from the Plan Fund). The balance of the Simpson Claim (*i.e.*, $50,000) will be paid by the Reorganized District in twelve (12) equal monthly installments, without interest, of $4,166.66 beginning on the first day of the first full month following date the foregoing initial cash payment is made. For example, if the Effective Date of the Plan is July 15, 2009, and the initial cash payment of $153,074.68 is made on August 15, 2009, the first installment on the balance of the Simpson Claim shall be paid on September 1, 2009 (and on the first day of the following eleven months thereafter). Class C3 is impaired.

**9 MISCELLANEOUS**

a. <u>Discharge</u>. As set forth in § 944(b) of the Code, the District shall be discharged from all debts on the Effective Date. The discharge of any claim timely and properly paid in accordance with the terms of the Plan shall be effective and entered even if other claims are not discharged for any reason. Any and all unfiled claims are discharged.

b. <u>Injunction</u>. Except as otherwise provided in this Plan, all entities that have held or may hold claims against the District are, as of the Effective Date, permanently enjoined from taking any actions against the Reorganized District or its property on account of such claims or interests including but not limited to, (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner, any judgment, award, decree, or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt or liability due to

the District: (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided however, that nothing contained herein shall preclude such persons or claimants from exercising their rights to and consistent with the terms of this Plan.

    c.    <u>Ombudsman</u>. On the Effective Date, pursuant to the Confirmation Order, the Court shall be deemed to appoint the Ombudsman to monitor and enforce the District's implementation of, and performance under, the Plan, at no cost to the District. The Ombudsman shall be vested with the standing of a party in interest on behalf of the holders of Class C1 and C2 claims pursuant to Section 1128 of the Bankruptcy Code for the purposes contemplated by the Plan and Section 930 of the Bankruptcy Code. The Ombudsman shall be authorized to file, on behalf of unsecured creditors generally, appropriate motions or applications in the Court related to the District's performance under the Plan. The appointment of the Ombudsman shall terminate, without further notice to creditors or order of the Court, on the 30th calendar day following the date all Class C1 and C2 claims have been finally allowed and paid pursuant to the Plan. The Reorganized District shall provide a written notice to the Ombudsman certifying the date that all Class C1 and C2 claims have been finally allowed and paid.

    d.    <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction over the Debtor and its operation subject to confirmation of the Plan for the following purposes only:

    i.    To rule on the allowance of claims and to hear any objections thereto:

    ii.    To conclude any adversary proceedings pending upon the Effective Date.

    iii.    To allow and approve or disapprove the payment of any administrative expenses not previously allowed;

    iv.    To determine and resolve questions concerning the existence of defaults under the Plan;

    v.    To correct any defect, to cure any omission, to reconcile any inconsistency in the Plans or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

///

    vi.  To issue any order necessary to carry out the Plan, including but not limited to enforcement of payment obligations by the Debtor under the Plan.

    vii.  For the purposes set forth in Section 930 of the Bankruptcy Code.

    viii.  To enter an order closing the Chapter 9 case.

  e.  <u>Adversary Proceedings</u>.  The Debtor reserves the right to begin or continue adversary proceedings permitted under the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure.  Notwithstanding the foregoing, the District has reviewed all potential avoidance causes of action under Section 926 of the Code and has determined that there are no known avoidance causes of action that the District will pursue.  Upon the Effective Date, avoidance causes of action under Section 926 of the Code shall be deemed waived and released.  The District does not waive any right of set off or defenses to claims which may exist.

  f.  <u>Modification of the Plan</u>.  The Debtors may submit modifications of the Plan the court at any time prior to confirmation pursuant to §942 and §1127 of the Code.

  g.  <u>De Minimus Claims</u>.  No check for any claimant need be issued under the Plan in an amount of less than $5.00. Such undistributed funds, as well as funds for checks distributed but not cashed within ninety (90) calendar days of mailing by first class mail, postage pre-paid, shall become the property of the District and not be redistributed to creditors.

  h.  <u>Claims Subject to Objection</u>.  The only claims which are subject to objection by the District or the Reorganized District are set forth in Exhibit D to the Disclosure Statement.  All other claims filed against the District shall be deemed finally allowed and shall not be subject to reduction, offset, counterclaim, avoidance or any other objection following confirmation of the Plan.  The allowed claims against the District are set forth in Exhibit E to the Disclosure Statement.  The District acknowledges that the Simpson Claim is an Allowed Claim.  The District further acknowledges and agrees that no objection to any of the claims listed on Exhibit D to the Disclosure Statement will be made on the grounds that such claim is untimely under the Government Claims Act (Section 905 of the California Government Code), ***unless*** the entire amount of such claim was not timely presented to the District as of the day immediately prior to the Petition Date of this Chapter 9 case (*i.e.*, April 4, 2007, the day prior to the petition date of April 5, 2007).  With the

Case: 07-10388   Doc# 168   Filed: 04/30/09   Entered: 04/30/09 13:15:38   Page 14 of 15

14

foregoing exception, all defenses and rights to the allowance of the claims identified on Exhibit D to the Disclosure Statement are reserved, respectively, by the District and the creditors holding such claims (including a creditor's ability to argue that the Government Claims Act does not apply to its claim). Objections to the claims identified in Exhibit D to the Disclosure Statement, if filed by the District, shall be subject to the applicable provisions of the Bankruptcy Code and Bankruptcy Rules and determined by the Court.

**10      DISBURSING AGENT AND COMMITTEE**

On and following the Effective Date, the Reorganized District will act as the disbursing agent under the Plan and the Confirmation Order will appoint the Reorganized District for this purpose pursuant to Section 944(b)(2) of the Bankruptcy Code. On the 30th day following the Effective Date of the Plan, the Committee shall be dissolved and the members of the Committee shall be released and discharged from any further rights and duties in connection with the Chapter 9 case, except with respect to any disputes over the amount, allowance or payment of any amounts payable to the members of the Committee and any of its professionals for services rendered or expenses incurred prior to the Effective Date. Any fees for services rendered or reimbursement for expenses incurred by the professionals employed by the Committee following the Effective Date but prior to the date of dissolution of the Committee shall be paid directly by the Reorganized District.

Dated: April 30, 2009

*/s/ David J. Heaslett*
David J. Heaslett
Attorney for Debtor